And the parties have 15 minutes aside, and I believe we're going to start with Ms. Bizarro. Thank you, Your Honor. May it please the Court, my name is Amelia Bizarro, and I represent the appellate Troy Emanuel. I'm going to reserve three minutes for rebuttal, and I'll keep an eye on my time. Thank you. There should be no question that the post-conviction process in this case was extremely flawed. But even so, Mr. Emanuel actually exhausted his ineffective assistance of trial counsel claims against Richard Tannery, who represented him from preliminary hearing through his plea, and Roy Nelson, who replaced Mr. Tannery before sentencing. The State Appellate Court had a fair opportunity to consider Mr. Emanuel's claims and correct the alleged constitutional violations, though it chose not to. But if this Court disagrees about actual exhaustion, the post-conviction process in this case was so flawed that exhaustion is excused under 2254b1b2. As a result, this Court should reverse the lower court's decision dismissing Mr. Emanuel's case and remand for consideration of his ineffective assistance of trial counsel claims. He has two ineffective assistance of trial counsel claims. The first regards Richard Tannery, who represented him, like I said, through his plea. Mr. Emanuel raised his claims regarding Mr. Tannery in his pro se pleadings in the post-conviction court. Then, somewhat inexplicably, the same court who appointed Mr. Nelson to replace Mr. Tannery before sentencing, when Mr. Emanuel tried to withdraw his plea, reappoints Mr. Nelson as post-conviction counsel. And so he now has a conflicted attorney, because Mr. Emanuel's case had both claims involving Tannery and Mr. Nelson. Mr. Emanuel doesn't stay quiet about this. He complains, but the Court ignores his filings. They put him on what's called the left side of the file, where they are received by the clerk's office, but not actually filed in the court record. That's because he's represented by counsel. That's because he's represented by counsel. And so rather than just filing them and, I guess, letting the Court be aware, what actually happens is that the clerk's office has that notice on the front page, and it sends it to the attorney that says, hey, your client is complaining about you. Of course, Mr. Nelson never brings this to the Court's attention. Mr. Nelson goes forward on Mr. Tannery's ineffective claims, and there's an evidentiary hearing scheduled. What's interesting and outrageous, I think, is that Mr. Nelson comes to the Court and says, Mr. Tannery's not here, he's in Oklahoma. In fact, Mr. Tannery was in another courtroom on one of Mr. Nelson's cases. Well, where is that in the record? So I didn't see anything in the record to suggest that he was in the courthouse on another one of Mr. Nelson's cases. Can you point me to a place in the record where that is? Yes, Your Honor. It's called a JAVS recording, which we manually filed in the district court. And I filed a motion around the time of the opening brief asking this court to order the district court to transmit that exhibit to this panel. And that video shows Mr. Nelson and Mr. Tannery together in the courtroom? It does. In fact, they're standing right next to each other. And before Judge Herndon, it's a scheduling hearing to schedule a hearing. And you hear the judge refer to Mr. Nelson by his first name, Roy. And Mr. Tannery is there, and they're trying to schedule because they know Mr. Tannery is going back and forth. And he says, well, I can be here whenever you want me to be here. But it is Mr. Nelson's case, and he had just got done telling Judge Smith at the evidentiary hearing for Mr. Emanuel that Mr. Tannery was unavailable. Well, he also told the judge that he thought the judge should wait until Mr. Tannery was available to have the hearing, right? He did. But in any case, there is a video that is in the district court record that makes it clear that on the same day there is this representation, and we have the transcript of that, they're both in the same courtroom together. Correct. There is not a transcript related to the video. It's just the video. There's a transcript of Mr. Emanuel's post-conviction hearing. Right. And that shows that at 9-15 is when Mr. Emanuel's hearing began. And on the video, it's date and time stamped and shows that that hearing began at 10-06 a.m. So Mr. Nelson literally walked from Mr. Emanuel's hearing where he said Mr. Tannery wasn't available to the other courtroom where Mr. Tannery was waiting for him. This just goes to show that the post-conviction process in this case – Isn't that impossible when there was a hearing? The hearing lasted about 45, 50 minutes. It's only about 30 or 40 pages long. And didn't Mr. Judd testify? Mr. Judd testified and Mr. Emanuel testified. Yeah. So wasn't Mr. Judd able to testify about the issues that Mr. Emanuel wanted to ask Mr. Tannery about? A little bit. It's the argument in the Nevada Supreme Court-slash-Court of Appeals, because the case got pushed down, and our argument that it wasn't enough. Mr. Judd got on the case about two weeks before the final calendar call, which was right before the trial was to begin. Right. So he wasn't part of it. But that's what Mr. Emanuel is complaining about. It's one of the things Mr. Emanuel is complaining about. He certainly is complaining about the advice that he received about whether or not to accept the original offer and the advice he received about this. This is the supposed promise that, notwithstanding what was on the record, reject this plea agreement. You're going to get a better deal later on, notwithstanding that the record has Mr. Tannery representing that he told your client to take the deal. Correct. So it's basically to cross-examine Mr. Tannery about were you lying to the court when you said you told him to take the deal? It's about that, but it's also about the lack of or what, if any, investigation Mr. Tannery performed. Mr. Emanuel complained that there was no investigation, there were no pretrial motions, there wasn't a request to hire an investigator. That related to his, I think, the advice he received or didn't receive or how he understood the advice. But we don't know what that advice is. Well, the basic claim, though, is that Mr. Tannery supposedly, while telling the judge I told him to take it, was really supposedly lying to the judge and telling your client, don't take it because the prosecution has promised that you, the shooter, will get a better deal than the non-shooters. I agree that that is part of it and that's part of the record. I think Mr. Emanuel was also saying, and what we don't know is what the advice was and what he understood and what he didn't understand. You mean other than what he, I'm sorry. Yes. So can you clarify? So Mr. Judd was co-counsel with Mr. Tannery in representing Mr. Emanuel when they were discussing the plea offer of the government, correct? Well, that's a little squishy, Your Honor. Mr. Judd joined the case right before the final calendar call. And so he was there, he does testify that he did visit Mr. Emanuel with Mr. Tannery where they at least one time discussed the plea offer. But I don't know how early. I think he also said that he met with Mr. Emanuel separately as well, even without Mr. Tannery, right? That's correct. Okay. But then Mr. Nelson, who is representing Mr. Emanuel with regard to the ineffective assistance of counsel claims against Mr. Tannery, then also hires Mr. Judd, correct? I don't believe so, Your Honor. Okay. I don't believe, but there are a lot of people in this case, but I don't believe that's correct. No, Mr. Nelson was on his own. He gets on the case because Mr. Emanuel finally was able to fire Mr. Tannery. He wants to withdraw his plea before sentencing. Mr. Nelson comes on board to give him advice on that. At first the court ordered an evidentiary hearing, but then they go to sentencing and Mr. Nelson explains that it's an ineffective thing and so it's better for post-conviction. And so they go forward with sentencing. Then after Mr. Emanuel files a pro se post-conviction petition, the court has a hearing and Mr. Nelson shows up and he says, sort of, I don't know what I'm doing here. I don't know what's going, I don't think I need to be here anymore. And the judge says, no, I'm going to appoint you as post-conviction counsel. He needs an attorney. You're it. Even though Mr. Nelson was trial counsel and some of the claims Mr. Emanuel had related to Mr. Nelson's ineffective assistance of counsel. Mr. Lay presented both of these claims in the Nevada Supreme Court through the fast track briefing, through his attempt to include that video as part of the record to show that Mr. Nelson's conflict mattered. I want to change your focus here for a second. In your supplemental brief, you have, I think, argued we should take a look at the appendix. Is that right? That's correct. So, I'm correct, though, you never made that argument to the district court. Is that right? That's correct. And you didn't put the appendix in the record before the district court. That's correct. Parts of, I mean, the pieces of the appendix individually are part of the state court record. But you're correct. I don't, I don't, the state filed the record and off the top of my head, Your Honor, that's correct that they didn't include the appendix. And you didn't make the appendix argument explicitly in your opening brief or your reply brief the first time was in your supplemental brief. Is that right? I did cite the case that relates, but you're correct. I didn't overtly make that argument. Okay. But in your citation to Scott, you did cite the page that had the appendix argument in your opening brief. That's correct, Your Honor. So, if you didn't raise it until the supplemental brief, why is it properly before us? I think it's before you because the argument on exhaustion, the actual exhaustion argument is now before you. And I did cite the case. Well, the exhaustion argument has always been before us. Correct. But I would like to think that this piece of it is before you because I cited the case related to it. And I think that just goes to, in my mind, while it's doubly exhausted, if you will, it's exhausted because Mr. Ley in his briefing raised these claims. On top of that, it's in the appendix. Now, I would agree that the appendix is not as overt about raising these claims as the government suggests it ought to be. But exhaustion doesn't have to be a kind of match one exact to match the other. Here, Mr. Ley raised issues regarding Mr. Nelson's conflict, essentially saying that the entire process was unfair and that he was per se ineffective, which to me means we get a redo on post-conviction. And he also raised Mr. Tannery's ineffectiveness, arguing that the hearing wasn't a meaningful hearing because Mr. Tannery didn't have the opportunity to testify. Can I clarify something about the record? So Mr. Emanuel's original pro se state habeas petition, which was before the State District Court, includes the three grounds that are the subject of this appeal. The supplemental state habeas petition filed by Mr. Nelson, his conflicted counsel, also requests a full grant of Mr. Emanuel's original pro se habeas petition. I think that's correct. Yes. And then the fast-tracked statement in the appendix attaches the entire original pro se state habeas petition, correct? Yes. And it also lists in part of the fast-tracked that the reason they're here is to appeal from the denial of the post-conviction petition. That's correct. And with that, if there aren't any more questions, I would like to... But in that fast-tracked statement, let's go to that fast-tracked statement. I'm sorry, Your Honor? Let's focus on that fast-tracked statement a second. Okay. Okay, in the fast-tracked statement, which Lay prepared, attorney Lay prepared, he argued that Nelson had a conflict of interest. Correct. Okay. That's not per se an ineffective assistance to counsel claim, is it? He made the argument that Mr. Nelson's conflict was such that he was per se ineffective. I'm arguing that necessarily exhausts all of the claims about Nelson being ineffective that were in Mr. Emanuel's pro se petition below. And the second claim he makes is the claim about Tanner's unavailability. Yes. He says that the hearing wasn't meaningful because Mr. Tannery wasn't there. Well, I don't see anywhere in that fast-tracked statement, except in the appendix, if the appendix is properly before us, I don't see anywhere in that fast-tracked statement that there is any allegation about Tannery's ineffective assistance of counsel.  He requests a new hearing. And the only reason that you could have a new evidentiary hearing is necessarily to litigate Mr. Tannery's ineffective assistance of trial counsel claims. I also want to mention that in the fast-tracked statement, he does cite to Strickland, he does cite to the Sixth Amendment. He also specifically mentions Nelson being ineffective when it comes to a failure to file a notice of appeal so that Mr. Emanuel could have a direct appeal. That claim is specifically in the fast-tracked statement as well. That is? It is, and I can bring you the cite when I come back if that would be okay. So the fast-tracked statement on Excerpt of Record 312 says that Mr. Emanuel is appealing the denial of post-conviction petition for writ of habeas corpus. On Excerpt of Record 314 cites that Mr. Emanuel filed this proper petition for habeas corpus, and then goes through on pages ER 323 through 333 his various allegations regarding ineffective assistance of counsel. And with regard to Mr. Tannery, his Ground 1 is on page 22 when he's talking about the hearing and on page 24. He goes through, isn't it that he says Mr. Emanuel is entitled to an evidentiary hearing in which Mr. Tannery should have testified because he asserted claims regarding Mr. Tannery's conduct of Mr. Emanuel's case that were supported by specific factual allegations not belied by the record that, if true, would entitle him to relief? Yes. He is essentially, the fast-tracked statement, as Your Honor pointed out, is raising these claims. He's frustrated by the procedure that happened. He's trying to fix that procedure. The argument I'm making is that necessarily exhausts the claims because he's asking to go back to fix them. Had Mr. Nelson But it's a due process claim he's making. He makes, I would, I don't disagree with you it's a due process claim about the hearing not being meaningful. But the only reason to have a new hearing necessarily is to litigate fully and for the first time Mr. Tannery's ineffective assistance. All right. Thank you, counsel. Notwithstanding that you have exhausted your time, we will give you a rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. I'm Deputy Attorney General Jamie Stills, and I represent respondents in this matter. Respondents ask this Court to affirm the decision of the U.S. District Court and hold that Emanuel is not entitled to habeas relief. Your Honors, you've just heard a very colorful depiction of some of the irregularities that happened during State District Court proceedings, which respondents acknowledge warranted a closer look. And in fact, the U.S. District Court took that closer look, appointing federal counsel to represent Emanuel, denying respondents initial motion to dismiss, and allowing Emanuel to file an amended petition. After undergoing this process and taking a deeper look into the State Court proceedings, the U.S. District Court correctly concluded that Grounds 1, 2.1, and 2.2 of the amended petition were unexhausted and procedurally defaulted, and therefore dismissal of the amended petition was the only viable course of action. Counsel, have you seen this video?  Okay, does the State contest that the video shows on the relevant day the lawyer who is representing that the tannery was in Oklahoma shows them in the same courtroom on the same day? The State's position is that the video is irrelevant because that's how— No, but that's not my question. I understand you may say it's irrelevant, but does the State contest that that's what the video shows? I believe that the record does show that the video had someone who appeared to be Mr. Tannery on the video recording. No, but my question is with Mr. Nelson in the courtroom. I don't think there's any question at this point that Mr. Tannery was in the courtroom. I saw nothing in the record which suggested that he was in the same courtroom on the same day with Mr. Nelson, and that's what your friend has represented. And my question is, does the State dispute that? The State is—I don't believe that there's anything in the record or in the briefings regarding confirmation that Mr. Nelson and Mr. Tannery were in the same courtroom. I'd be happy to go back and take a look and submit a 28-J letter as to that. Yeah, why don't you—unless my colleagues object, I would be interested in finding out the State's position on that. Yes, Your Honor, we'll do. All right. Please go ahead. Thank you, Your Honor. So to the point that the video recording is not entirely pertinent to the issue here, Emanuel is not actually entitled to habeas relief because he failed to exhaust Grounds 1, 2.1, and 2.2, and he also failed to demonstrate cause and prejudice to excuse this failure to exhaust his claims. As to the first point, which is the uncertified issue, the lower court correctly determined that Emanuel failed to exhaust Grounds 1, 2.1, and 2.2. The federal courts can't grant relief on claims unless the petitioner exhausts all of his available State court remedies. Counsel, you know, so I might agree with you on whether the claims are exhausted, but let me voice what my concern is here, that you would agree that there are certain things that can excuse exhaustion, and the State's view is they're not present here, right? Correct. But if there were a circumstance where, let's say, hypothetically, your friend is correct about what the video shows, and that would mean that Mr. Nelson, although he wasn't under oath, was directly making a false representation to the court, where if he had told the truth to the court, there is, in my mind, no question that Mr. Tannery would have been called as a witness that day in that hearing and testified. And yet Mr. Nelson was counsel in the post-conviction proceedings, right? Yes, Your Honor. So if, in fact, Mr. Nelson committed that type of gross misconduct as an attorney with that kind of grossly false relevant material representation in that proceeding, wouldn't that be the type of incident that would excuse a procedural default when that same person was acting as counsel? No, Your Honor. Okay, so why don't you explain to me why not? Absolutely, Your Honor. So the State is very sympathetic to the fact that this is an irregularity, and there were definitely concerns regarding the proceedings that occurred, not least of which was the State District Court appointing Mr. Nelson as post-conviction counsel as well. But the problem that occurs with Emmanuel's argument is that those irregularities did not actually impact his ability to exhaust his claims because Mr. Nelson did present claims. See, my problem is when I looked at the record, there was nothing that I saw in the record which indicated, I mean, I saw it in your friend's brief, but without a record site, that this was actually a false representation to the court as opposed to just a mistake because the prosecutor said it too, that he thought the person was in Oklahoma. But to me, it's a horse of a different color if other than just a mistake, it is a deliberately false representation to the court as to a very material matter, and this is the person who is representing the man who is serving a very long sentence in jail. I mean, to me, if that's what the facts are, that's a big difference to me in whether the proceeding is so infected by this misconduct that a procedural default could be excused. So that's why, to me, it's a difference, and that's why the State's representation on this will matter at least to me. Yes, Your Honor, that makes sense. The issue is that the default did not occur as a result of Tannery not testifying at the evidentiary hearing. No, but Nelson was the lawyer doing all this, right? Yes, Your Honor. Yes, Nelson was the lawyer, and Nelson did, in fact, bring Attorney Judd to the evidentiary hearing where Judd testified. So there was evidence gathered regarding Emmanuel's claims that his trial counsel, had acted ineffectively during the course of the trial. No, I understand that, and if this case ever gets to the point where Mr. Emmanuel will have to prove that what he claims happened, happened, that's going to be a high mountain for him to climb, given what the transcripts show of the actual plea, but he certainly would have been entitled to question the lawyer who he claims gave him this advice, if the lawyer were really in the building and his lawyer knew it. Perhaps, Your Honor, but again, the issue is that Emmanuel is not entitled to post-conviction counsel, and even though there were potentially issues with Mr. Nelson's representations, the issue is that Mr. Nelson still presented Emmanuel's claims in the initial post-conviction proceedings in State District Court. But he didn't present the claims against himself, correct? He just presented the claims against Tannery, the counsel before Mr. Nelson. Your Honor, Mr. Nelson filed a supplemental brief that incorporated the original habeas petition filed by Mr. Emmanuel Prose, which did contain the concerns regarding Tannery and Nelson. But his supplemental brief, other than what you're representing, didn't include the IAC claims against himself, correct? No, Your Honor. His supplemental brief also included as an attachment, as an exhibit to his supplemental brief, the Prose pleading that stated that Nelson had performed ineffectively and that Tannery had performed ineffectively. Is it reasonable to expect that a counsel would file ineffective assistance counsel claims against himself? Usually one would not expect that, but Mr. Nelson did in fact include that when he attached the original petition as an exhibit to ensure that the court was looking at those exhibits and ensuring that the court was taking a look at those claims, which the State District Court did take a look at and incorporated into its findings of fact and conclusions of law. And representing his client, would he have any incentive to build a case or get any discovery about his own ineffective assistance? Perhaps not, but the fact that the claims were still presented meant that they could have been developed further by Attorney Lay, who was an independent third attorney appointed to represent Emmanuel on appeal to the State Supreme Court. And that's exactly what he requested, correct? To get the discovery, to get the information about whether Mr. Nelson knew Mr. Tannery was present on that day in the courthouse. That's exactly what he wanted, correct? It appears from the record that Mr. Lay attempted to introduce the recording in order to support his contention that the District Court should have continued or moved the evidentiary hearing in order to have Mr. Tannery testify. So Mr. Lay never once stated that he wanted the video recording to be introduced in order to introduce an ineffective assistance claim. But you would agree that Mr. Lay was seeking effectively discovery to prove the ineffective assistance of counsel claims? No, Your Honor, because Mr. Lay never presented ineffective assistance of counsel claims. Mr. Lay focused specifically on the District Court's error in not continuing the evidentiary hearing. He sought relief for Emmanuel under the guise of a due process deprivation. That's not the same thing as bringing a claim under ineffective assistance of counsel. Counsel, what is the State's position on whether we can consider the argument that your friend is making that the appendix was before the Nevada Appellate Court? The State's position is that the appendix was not before the Nevada Appellate Court. It was not presented. No, but my question is, can we consider their argument that it was? No, Your Honor, because it wasn't presented properly below in the Federal District Court, so this Court is not supposed to consider it now. Do you believe it was presented appropriately to us? No, Your Honor, it was not, because it also wasn't included in the original briefings, so the State was not given the chance to address it in the answering brief. So if you're correct, then we have to decide whether or not the argument was fairly and fully presented in the fast-track statement. Correct, Your Honor. Okay, so why what was said in the fast-track statement? Why isn't that enough? The fast-track statement specifically focused on two claims. So they focused on a claim that Mr. Nelson actively represented conflicting interests that adversely affected his performance, which was brought under the Sixth Amendment right to conflict-free representation. Okay. That is not the same thing as the ineffective assistance of counsel claims that Emmanuel is now trying to present in Grounds 1, 2.1, and 2.2. So now Emmanuel is attempting to argue that there were specific instances of Tannery and Nelson's ineffective assistance of counsel with respect to the plea deal, the sentencing, and his direct appeal. That's very different than the claims below in the fast-track statement where Mr. Ley focused specifically on the conflict of interest and then on the District Court error. Those are not the same at all. And the U.S. Supreme Court has already stated that petitioners are not allowed to simply scatter relevant facts and legal theories throughout their briefing below in state court and seeking relief under a particular constitutional guarantee and then turn around and come to the federal court and ask for different relief under a different constitutional guarantee. And it's interesting because if the court looks at the First Amended Petition, there's actually a specific claim in 2.3 that focuses on Mr. Nelson's alleged ineffective assistance. Can we go back to a minute? The fast-track statement specifically says Mr. Emmanuel is appealing the denial of post-conviction petition for writ of habeas corpus, and that order specifically does rule on Ground 1, Ground 2.1, and Ground 2.2. I'm looking at the excerpt of Record 263 to 264. The State District Court specifically did rule on these. So that is, in fact, what Mr. Ley was appealing in the fast-track statement, isn't it? Mr. Ley was appealing from the State District Court's denial. That's correct. And the State District Court did rule on those issues, which means that Mr. Ley could have presented those issues on appeal and simply chose not to or perhaps failed to do so. Well, I mean, Judge Koh is, if I'm interpreting her question correctly, Judge Koh is saying the fast-track statement is explicitly saying those issues are up for review. Do you disagree with that? The fast-track statement suggests that it's appealing from this denial. That does not mean that it's appealing all of the issues that were denied because State Appellate Counsel has to make a choice as to which issues to appeal. And Mr. Ley focused on two very specific issues on appeal rather than including all of them that were raised below. I'm having trouble understanding this. If you look at the fast-track statement, if you look at the fast-track statement, it talks about Nelson's conflict of interest. Okay, and what they were complaining about below, what they're complaining about in the fast-track statement to the Supreme Court of Nevada is that because of his conflict, he was ineffective in that they didn't have an opportunity to explore that claim before the state court. Your Honor, I apologize, but I see my time is up. May I respond?  Thank you. Isn't that an accurate statement of what they're claiming in front of the Supreme Court? No, Your Honor. What Mr. Ley was claiming in front of the Nevada Supreme Court was simply that there was this conflicting issue that's not the same as seeking further evidence or attempting to present an ineffective assistance of counsel claim regarding Mr. Nelson's handling. But he said that he was entitled to a remand to more fully develop his claim. Your Honor, I do not... I mean, that sounds to me like he was asking for an opportunity on remand to develop a claim against Nelson. Your Honor, in reviewing the fast-track statement, there does not appear to be any request for a remand or for a new hearing. The claims are presented, and it's an appeal of the state district court's decision. But there's nothing in there that suggests that Mr. Ley was specifically requesting a remand for a new hearing. It was simply an appeal of the state district court decision to overturn the state district court decision regarding the habeas, the state habeas petition. That's not the same thing as seeking a specific remand to address ineffective assistance of counsel claims or claims regarding issues... Yeah, but certainly he was asking for the case to go back to the lower court. Correct, Your Honor, on these two specific issues. Isn't that tantamount to asking for a remand? But that's not the same thing as asking for a remand to address ineffective assistance of counsel claims or to address... Well, but he talks about... I mean, you're losing me here when you're saying that there's a distinction between alleging a conflict and claiming ineffective assistance of counsel. So there are two different constitutional guarantees at issue here. So there's the right to effective assistance of counsel, and then there's the right to a conflict-free representation. They're two different constitutional guarantees. They both relate to counsel's performance, but they are two different types of constitutional guarantees. And the conflict of interest was specifically regarding Nelson representing Emmanuel at the plea hearing portion of the lower court proceedings and then representing him again in the post-conviction phase. That's not the same thing as the claims now presented in the federal amended petition regarding Nelson's alleged ineffective assistance with respect to his addressing of the plea deal, his addressing of the sentencing, and his failure to file Emmanuel's direct appeal. Those are very different instances. The Ninth Circuit case says that you need to make that claim with the degree of clarity that you're articulating here today. There are several, Your Honor. There's Castillo v. McBattin, which states you have to have the operative facts and the federal legal theory tied together in front of the state court. There's Picard v. Conner, which is U.S. Supreme Court, which says that you cannot exhaust by inferring a claim from relevant facts and legal theories. You can't simply expect the court to pick through the brief and pick out something that has not been directly alleged. And there's also a bigger pardon. These are all in your brief? Yes, Your Honor. Okay. I'll accept that. But in Castillo, they didn't cite any constitutional provision, anything. But in Mr. Emmanuel's pro se petition, he specifically calls out Strickland v. Washington. He specifically says ineffective assistance of counsel. He – let me just get a moment to – it's easily distinguishable from Castillo. I mean, he says Sixth Amendment, ineffective assistance of counsel for failure to file an appeal. That's ground two. Ground one, he says ineffective assistance of counsel, Sixth Amendment to the U.S. Constitution, fail to get deal as promised, et cetera. And he goes through – I'll be specific. Counsel never formally got back with me after he explained to me that he could get a better deal. But he had the first attorney been acting as an effective attorney. Petitioner would have been doing 8 to 20 years because he would have understood the deal in his entirety. Now, that's not saying anything about the actual merits of these claims, but he certainly does more than in Castillo, right? He has citations to Strickland v. Washington. It's a little different than Castillo, but Castillo v. McFadden, in that one, the petitioner did present a number of different constitutional references. And in Picard, I believe, that one also included several different Fifth Amendment references, Fourteenth Amendment references. But because it was brought under one specific constitutional guarantee, the Court cited that the State Appellate Court could not just infer a different claim, even though it was related to the same amendment or same case law. It has to be raised within that specific constitutional claim, which Emanuel failed to do here. All right. Thank you, Counsel. Thank you, Your Honor. So, Ms. Bizarro, had you originally, do I remember correctly, you'd originally asked for four minutes? Three minutes, Your Honor. Oh, we'll give you four minutes. Oh, thank you. We took counsel for the State way over her time, so you have four minutes. Thank you. I first want to address Your Honor's initial concern about the video. The video shows the judge in that case referring to Mr. Nelson as Roy. He doesn't call him Roy Nelson. I could submit if the Court would accept the minute entry of the Court from that day that describes who is present there. I think the Court can take judicial notice of that document to supplement the video, although it wasn't below, but it does specifically say that Mr. Nelson is the person present. With Mr. Tannery. Mr. Tannery and Mr. Nelson. Unless my colleagues have any objection, I would welcome that. Okay. Thank you, Your Honor. I also wanted to mention that below I did ask for an evidentiary hearing, because it is true we've never heard from Mr. Nelson, and we've never heard from Mr. Tannery, and that was denied along with when the motion to dismiss was granted. I think it is a stretch to say that Mr. Nelson presented his own ineffective assistance because he attached some documents to a state-drafted, he attached some documents to his supplemental petition. Let me go back a second. If we sent this back to the District Court directing them to hold an evidentiary hearing, which we could do, how is that going to help your claim? I think I get to present evidence from both Mr. Tannery and Mr. Nelson and get to, for the first time, really develop these claims, because this post-conviction process below was so flawed. We haven't heard directly from Mr. Tannery about what advice he gave, what investigation he did, what his contact was like with Mr. Emanuel, and we certainly have never heard from Mr. Nelson about any of his own ineffectiveness. Did Mr. Emanuel, as he said, tell him to file a notice of appeal? That he didn't. On its face, the advice he gave, that he told the court he gave to Mr. Emanuel about his request to withdraw his plea being more of a post-conviction matter, that's that advice on its face. Had he proceeded with that motion at that time, it's a much lower manifest injustice case. Is there a relevant thing that you can ask, if we granted an evidentiary hearing, evidence as to why there was not an excuse for exhaustion? Don't you still have to get by the exhaustion argument? I think Mr. Ley's attempts to raise these claims, to get new post-conviction proceedings with conflict-free counsel, necessarily raised the claims. In my mind, it's no different from a person who tries to present an innocence argument to overcome the procedural bars, and then appeals the finding that he didn't prove innocent. That necessarily is being done so that you can prove the underlying claims. And I think it's the same thing here. Had Mr. Ley done what the state suggests, and just sort of jotted down these claims, we would be in no different position. This is the same court of appeals that rejected the conflict claim because it said it wasn't in the petition and supplemental petition, keeping in mind that when Mr. Emanuel filed the petition, Mr. Nelson wasn't his lawyer. And when the supplemental petition was filed, it was Mr. Nelson filing the supplemental petition. This court, with a straight face, said, well, you didn't raise conflict below, when clearly Mr. Emanuel did more than five times in, I think, a three-month period through his many letters. So Mr. Ley's attempts to correct the procedural problems here necessarily exhausted his claims. In the fast-track statement, as Judge Coase pointed out, he does cite Strickland. And very specifically at 325, he also lists a specific claim where he says, post-conviction counsel failed to raise an appeal deprivation claim on direct appeal. I mean, that meets the government's test for exhaustion precisely. And with that, Your Honor, I see I'm over my time. I appreciate your time here today and the extra time. All right. Thank you. We thank counsel for their helpful arguments. And with regard to these supplemental filings, can both counsel accomplish them within a week? All right. Notwithstanding that there are going to be additional filings, the case will be submitted. And after we receive the filings, we'll consider whether those filings have any effect on the submission. But with that, we will move to our final case on the argument calendar, United States v. Finn.
judges: Fisher, BENNETT, KOH